## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Masjid Malcom Shabazz House of
Worship, Inc.,

                    Plaintiff,

v.

City of Inkster and Mark Minch,

                    Defendants.

_____/

Case No. 19-11823

Judith E. Levy
United States District Judge

Mag. Judge Mona K. Majzoub

## OPINION AND ORDER GRANTING DEFENDANTS CITY OF INKSTER AND MARK MINCH'S MOTION TO DISMISS PLAINTIFF MASJID MALCOM SHABAZZ HOUSE OF WORSHIP'S FIRST AMENDED COMPLAINT [24]

## I. INTRODUCTION

Plaintiff Masjid Malcom Shabazz House of Worship, Inc. brings this lawsuit against Defendants—Inkster Building Official Mark Minch and the City of Inkster, Michigan—for allegedly designating Plaintiff's properties for demolition in violation of Plaintiff's constitutional and statutory rights. (ECF No. 1, PageID.12-17.) Specifically, Plaintiff charges Defendants with violating Plaintiff's Fourteenth Amendment substantive and procedural due process rights, violating two Michigan

procedural notice statutes, and with perpetuating a civil conspiracy designed to wrongfully demolish Plaintiff's properties. (*Id.* at PageID.558-565.)

Before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint. (ECF No. 24.) For the following reasons, the Court GRANTS Defendants' motion in its entirety and DISMISSES this case.

## II.  BACKGROUND

Plaintiff Masjid Malcom Shabazz House of Worship is a not-for-profit charitable corporation that seeks to "combat[] urban blight by creating [local community centers] in underserved communities in Michigan." (ECF No. 20, PageID.551-52.) Defendants are the City of Inkster, Michigan—the governing agency and municipality where Plaintiff's buildings are located—and Mark Minch, an individual employed by the City's Building Division. (*Id.* at PageID.551.) On an unstated date, Plaintiff purchased twenty-seven properties—including a skating rink, banquet hall, and residential housing facility—from Wayne County in a tax foreclosure auction. (*Id.* at PageID.552; ECF No. 20-2, PageID.571.) At issue are the following five properties that Defendants allegedly scheduled for demolition in violation of Plaintiff's state and

2

federal rights: 3477 Inkster Road, 3677 Inkster Road, 4075 Inkster Road, 27440 Michigan Avenue, and 27480 Michigan Avenue. (*See id.* at PageID.550.)

Prior to Plaintiff's purchase, the City of Inkster had maintained "custody and control" of the properties "for months and sometimes years proceeding auction." (ECF No. 20, PageID.552.) Plaintiff alleges that it purchased these properties "with encouragement" from the City of Inkster's "then future Mayor Byron Nolen, who gave advice and counsel to [Plaintiff]" regarding the purchases.[1] (*Id.*) Plaintiff then applied for, and received, permits from the City authorizing Plaintiff to perform cosmetic work on the properties. (*Id.*) As far as the Court can gather from Plaintiff's attached exhibits, the permits were valid through January 5, 2019. (*See, e.g.* ECF No. 21-2, PageID.604 (permit for 27440 Michigan Ave).)

After approving Plaintiff's permits, the City inspected Plaintiff's buildings at various dates from February through June 2018 and subsequently placed "demolition and condemnation" notices on five of

---

[1] Plaintiff does not explain this encouragement or describe when it took place.

3

them for various violations.[2] (ECF No. 20, PageID.552.) Plaintiff attaches to its complaint, without explanation, five documents issued by the City of Inkster detailing multiple flaws with the buildings at issue in this case and entitled "dangerous building enforcement." Because Plaintiff does not provide context for these documents, the Court infers that they are either 1) what Plaintiff refers to as the "demolition and condemnation" notices; or 2) inspection results that predated the demolition notices. In any event, the documents are as follows:

- A "Dangerous Building Enforcement" warning for the 27440 Michigan Avenue property that details an "interior inspection" filed on April 12, 2018 and completed at 9:15 a.m. on June 11, 2018. (ECF No. 21-2, PageID.609.) The document lists sixteen building violations and notes that "building, electrical, mechanical and plumbing permits will be required for code repairs." (*Id.*)

---

[2] Plaintiff describes the violations as "de minimus" and provides the example of a 4075 Inkster citation for "flower bed brick and cap broken, rotten and missing soffit material." (ECF No. 20, PageID.552-553.) However, the Court notes that many of the violations listed in the City's "dangerous building enforcement" warnings are more serious. For example, the 3477 Inkster Road property was cited for "wall covering materials falling off," "bathroom missing all components and supply lines," and "mechanical systems non-operational and badly rusted." (ECF No. 22-3, PageID.653.) The 3677 Inkster road property was cited for "no ceiling as roof is gone and joists are rotted" and "trees growing inside." (*Id.* at PageID.656.) The 4075 Inkster Road property was cited for "exposed electrical wiring" and "furnace missing all connections and supply." (*Id.* at PageID.658.) The 27480 Michigan Avenue building was cited for failing to have "proper I-beam support" and for "cap off open gas supply line in basement." (*Id.* at PageID.668.)

- A "Dangerous Building Enforcement" warning for the 27480 Michigan Avenue property that details an "interior inspection" filed on April 12, 2018 and completed on June 11, 2018. (ECF No. 22-3, PageID.668.) The document lists eighteen building violations. (*Id.*)
- A "Dangerous Building Enforcement" warning for the 3477 Inkster Road property that details an "interior inspection" filed on December 28, 2017 and completed on February 1, 2018. (ECF No. 22-3, PageID.653.) The document lists fifteen building violations. (*Id.*)
- A "Dangerous Building Enforcement" warning for the 3677 Inkster Road property that details an "interior inspection" filed on December 26, 2017 and completed on February 1, 2018. (ECF No. 22-3, PageID.656.) The document lists seven building violations and notes that "this inspection was visual from exterior due to danger of falling materials." (*Id.*)
- A "Dangerous Building Enforcement" warning for the 4075 Inkster Road property that details an "interior inspection" filed on December 19, 2017 and completed on February 1, 2018. (ECF No. 22-3, PageID.658.) The document lists twelve building violations. (*Id.*)

Throughout the 2018 inspections, Plaintiff's "consultant and real estate agent," Mr. Kenneth Chambers of Chambers Realty, served as Plaintiff's contact with the City. (ECF No. 20, PageID.554) Plaintiff alleges that Mr. Chambers was "on site" for many of the inspections and repairs and that he "physically came to Defendant City of Inkster to pay for permits, fees etc. for the renovation of the buildings." (*Id.* at PageID.555.) Plaintiff alleges that Mr. Chambers "had direct

5

communications with Defendant Minch regarding [Plaintiff's] properties," including coordinating inspections with him.[3] (*Id.*)

Plaintiff alleges that, despite working to repair its properties through late 2018, Defendant determined in a December 2018 hearing that the five properties would be demolished. (*See* ECF Nos. 20, PageID.553; 22-3, PageID.650.) Mr. Chambers attests in his affidavit that Plaintiff was not informed ahead of time that this hearing was taking place. Rather, when he attempted to have the buildings' municipal permits reissued in early 2019, he

> learned that no payment could be accepted due to the [properties] being set for demolition. . . . As the local contact for [Plaintiff], [he] was never contacted or advised [that] the status of these properties had changed to "demolish" at a hearing in December 2018, nor was an opportunity provided to correct any of the issues outlined in the demolition notices, [nor did the City consider] the extensive renovation and repair

---

[3] For example, Plaintiff attached to its complaint an affidavit from Mr. Chambers stating that, on July 11, 2018, he scheduled inspections for the properties with Ms. Willynda Smith, an Assistant Administrator for the City of Inkster. (ECF No. 22-3, PageID.650.) Ms. Smith confirmed via email that plumbing, building, and electrical inspections would take place for 3677 Inkster, 4075 Inkster, and 3477 Inkster on July 17 and July 18, 2018. (ECF No. 22-4, PageID.694.)

It is unclear from Plaintiff's pleading whether these inspections took place, or if so, whether these inspections were distinct events from the inspections detailed in the "Dangerous Building Enforcement" warnings that took place from February to June 2018.

that had been done to the properties prior to the December
2018 hearing.

(ECF No. 22-3, PageID.650.) Plaintiff alleges that its members were
surprised to receive notice of an impending demolition, as "no posting was
ever attached to the property" and "there was never any notice provided
by certified mail as required by Michigan law." (*Id.* at PageID.556.) (ECF
No. 20, PageID.554.) On January 17, 2019, the City issued five
"DEMOLITION     BOARD     NOTICE[S]     OF     DETERMINATION"
summarizing the December 12, 2018 decision of the Dangerous Building
Board of Appeals and ordering demolition for all five buildings "due to
non-scheduling of follow up inspections, incomplete permits, failure to
register as a Vacant Property, and general non-compliance." (ECF Nos.
22-3, PageID.673-674; 22-4, PageID.681, 684, 687, 690, 693.)

On January 22, 2019, Mr. Chambers and Defendant Minch met to
discuss the demolition orders and Plaintiff's options for appealing them.
(*Id.* at PageID.675.) In a February 1, 2019 email summarizing this
meeting, Defendant Minch advised Mr. Chambers that "[t]here ha[d]
been no final approvals on any of the properties," that Plaintiff would be
welcome to send a representative to an upcoming February 20 meeting
of the City Board, and that no appeal would be heard at that time. (ECF

7

No. 22-3, PageID.677.) On January 23, 2019, Plaintiff sent to Defendants five identical letters: one for each condemned property. Each letter was entitled "Request for Administrative Review and for Stay of Building Demolition," and each letter argued that Plaintiff "was never given a notice and opportunity to be heard" regarding the demolition of Plaintiff's properties and that the properties do not pose a threat or hazard to public safety. (ECF No. 22-4, PageID.679-680.) Plaintiff requested information about "all administrative levels of review to which [it was] entitled." (*Id.* at PageID.680.) Plaintiff alleges that, despite attempting to "formally" appeal all the demolition orders, Defendants never responded or provided any information "as to the administrative process to effective due process." (*Id.* at PageID.555.)

Subsequently, Plaintiff commissioned five independent structural investigations for the buildings that Plaintiff alleges demonstrate that it "cured all cited defects" identified by Defendants. (ECF No. 20, PageID.553.) Three of these evaluations were completed on February 14, 2019 in response to a December 26, 2018 violation notice for 3477 Inkster Road, 3677 Inkster Road, and 4075 Inkster Road, and two evaluations completed on February 21, 2019 in response to a June 11, 2018 violation

notice for 27440 Michigan Avenue and 27480 Michigan Avenue.[4] (ECF Nos. 20-4, PageID.584; 20-6, PageID.591-592; 21-1, PageID.600-601; 22, PageID.619-620, No. 22-2, PageID.644.) The evaluations are all signed by Hakim Shakir, P.E. of Engineering Services, Inc. The evaluations all note that the company completed evaluations for each property in February 2019, that the engineer "made special attempt to address the items in the violation notice," and that the engineer found "the structure[s to be] safe and pose[] no Actual and Immediate Threat to the Health, Safety, and Welfare of the Public."[5] (*Id.*)

Plaintiff alleges that, despite it "cur[ing] all cited defects," Defendants "never gave [P]laintiff notice and opportunity to be heard regarding the demolition order and refused to allow inspection so that it

---

[4] The 27480 Michigan Avenue evaluation notes that there were two violations issued regarding this property: one on June 11, 2018 and one on April 12, 2018. (ECF No. 22-2, PageID.644.)

[5] Plaintiff's complaint is somewhat muddled on this point, but despite these evaluations indicating substantial defects in all five properties, Plaintiffs seems to imply that only 3477 Inkster Road and 3677 Inkster Road had defects remaining to be cured. Plaintiff otherwise alleges that "4075 Inkster Rd., 27440 Michigan Ave., and 27480 Michigan Ave. were all structurally sound before demolish[ment] was ordered." (*Id.* at PageID.554.)

became impossible for the demolition order to be reversed by any legal administrative means."[6] (ECF No. 20, PageID.553.)

Plaintiff filed this complaint in the Wayne County Circuit Court on February 20, 2019, alleging violation of the Fourteenth Amendment substantive and procedural due process provisions for attempting to demolish Plaintiff's properties without due process. (ECF No. 9-2.) Plaintiff also charged a separate "violation of section 1983—due process" claim, as well as charging violation of two Michigan state laws (MCL 125.540 and MCL 125.542) that detail pre-demolition notice and procedure requirements. (ECF No. 9-2.) In response to Plaintiff's initial complaint, Defendant filed a motion to dismiss the lawsuit on procedural

---

[6] Plaintiff additionally attaches to its complaint, without explanation or context, a City of Inkster notice stating that the 27440 Michigan Avenue property was "NOT APPROVED" as of July 25, 2018. Accompanying the citation is a "NOTICE OF APPEAL HEARING" dated April 26, 2018. (ECF No. 21-2, PageID.614.) The notice states that Plaintiff had appealed a notice of condemnation for the 27440 Michigan Ave property and that a hearing was set for May 23, 2018. The notice warned that failure to appear at the hearing would result in "a default judgment with the ordered condemnation and demolition to be implemented." (*Id.*)

The Court cannot determine whether this notice was part of a separate condemnation process for one of the buildings at issue in this case, or whether this notice is pertinent to the case and in fact contradicts Plaintiff's allegation that it received no notice or appellate process. Because this notice does not impact the Court's analysis of Defendant's motion to dismiss, the Court merely acknowledges this potential factual discrepancy here.

grounds. (ECF No. 9.) After the Court denied this motion, Plaintiff filed an amended complaint on November 21, 2019 that added a civil conspiracy charge but was otherwise identical to the initial complaint. (ECF No. 20.) On December 5, 2019, Defendants filed a timely motion to dismiss the amended complaint on the merits. (ECF No. 24.)

Defendant indicated in its motion to dismiss that Plaintiff's properties had not yet been demolished at the time of its filing in December 2019. Additionally, Plaintiff has never requested a stay from this Court to halt demolition proceedings, and neither party has updated the Court to indicate that this case has been mooted by the demolishment of the properties. Accordingly, the Court assumes for the purpose of this motion that the City has not yet demolished Plaintiff's properties.

## I.  Legal Standard

Defendants Mark Minch and the City of Inkster filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Minch also alleges that he is entitled to qualified immunity from Plaintiff's claims. (ECF No. 24.)

11

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## II.   Analysis

Plaintiff charges Defendants with perpetuating a civil conspiracy to unlawfully demolish Plaintiff's properties, violating two Michigan demolition notice statutes, and violating Plaintiff's Fourth Amendment

procedural and substantive due process rights.[7] (ECF No. 20.) For the reasons below, the Court GRANTS Defendants Mark Minch and City of Inkster's motion to dismiss each claim in the complaint for failure to state a claim upon which relief may be granted.

## A. Civil Conspiracy

Plaintiff charges Defendants with one count of civil conspiracy, arguing that

> Defendant City of Inkster, its representatives, employees and agents, including Mayor Byron Nolen[8] and Mark Minch, have acted in combination and in concerted action to wrongfully and illegally refuse to perform building code complaint property inspections, have engaged in the implementation and assessment of improper code violations, and illegally referred Plaintiff's property for demolition, when the property was structurally sound and Defendants knew it was structurally sound.

(ECF No. 20, PageID.565.) In response, Defendant argues that the intracorporate conspiracy doctrine bars Plaintiff's civil conspiracy claim. Because Defendant is correct that a municipality cannot conspire with

---

[7] Plaintiff also brings a count entitled "Violation of Section 1983-Due Process." (ECF No. 20, PageID.559.) The Court will not separately address this count as it is duplicative of Plaintiff's Fourteenth Amendment substantive and procedural due process claim.

[8] Plaintiff did not name Mayor Byron Nolen as a defendant in this lawsuit.

its own employees for the purposes of a civil conspiracy claim, the Court need not reach Defendant's alternative argument: that Plaintiff failed to plead its civil conspiracy claim with requisite specificity. (ECF No. 24, PageID.726-732.)

To make out a § 1983 claim "for conspiracy to deprive [a plaintiff] of their due process rights," a plaintiff must show three things: 1) there was a common plan; 2) the conspirators shared an objective to deprive the plaintiff of their constitutional rights; and 3) the plaintiff's injury was caused by an overt act committed in furtherance of the conspiracy. *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). Additionally, a plaintiff must demonstrate that the conspirators are not members "of the same collective entity," but rather that they are "[at least] two separate 'people' [capable of forming] a conspiracy." *See id.*

This latter principle is called the "intracorporate conspiracy doctrine," and the Sixth Circuit recently applied it to § 1983 suits "to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Id.* at 818 (explaining that municipalities are themselves considered

14

"persons" within the meaning of this doctrine). The "scope of employment" exception "recognizes a distinction between collaborate acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). The Sixth Circuit has noted that an entity acts "beyond the scope of [its] employment where the aim of the conspiracy exceeds the reach of legitimate corporate activity . . . . For example, a manufacturing corporation's employees might not be within the intracorporate conspiracy exception if, for racially discriminatory reasons, they attempted to prevent a person from renting an apartment owned by another company." *Id.* at 840-41. Additionally, while courts should be particularly "wary of situations in which corporate actors try to interfere with a plaintiff's access to public benefits . . . internal corporate decisions . . . would almost always be within the scope of employment." *Id.*

In this case, all of Defendants' activity as described in Plaintiff's complaint—when analyzed in the light most favorable to Plaintiff—falls within Defendants' scope of employment. Plaintiffs accuse Defendant City of Inkster and two of its employees—non-party Mayor Byron Nolen

and Defendant Mark Minch—of engaging in "concerted action to conspire to wrongfully and illegally demolish Plaintiff's properties." (ECF No. 20, PageID.565.) As described in Plaintiff's complaint, this "concerted action" allegedly involved: refusing to perform building code inspections, improperly assigning violations to Plaintiff's properties, and unlawfully referring Plaintiff's properties for demolition. (ECF No. 20, PageID.565.) All of this activity falls squarely within Defendants' scope of employment as municipal manager and employee building official who were tasked with issuing building permits and demolishment notices. Plaintiff's complaint does not indict Defendant for acts of particularized discrimination, as was hypothesized in *Johnson*, but rather displays frustration with the notice requirements that it believes it was denied in the course of Defendants' adverse permitting decisions. Absent some evidence in the complaint that Defendants' actions went beyond the "reach of legitimate corporate activity," Defendants' actions are precisely the kind of "internal corporate decisions" that the Sixth Circuit has

16

determined are "almost always [] within the scope of [] employment."[9] *See Johnson*, 40 F.3d at 841.

Accordingly, the Court dismisses Plaintiff's civil conspiracy claim.

## B. Michigan Statutory Violations

Plaintiffs charge Defendants with violating two Michigan statutes: MCL 125.540 (titled "Notice of dangerous building; contents; hearing officer; service") and MCL 125.541 (titled "Hearing; testimony, determination to close proceedings or order building or structure demolished, made safe, or properly maintained; failure to appear or noncompliance with order; hearing; enforcement; reimbursement and notice of cost; lien; remedies"). (ECF No. 20, PageID.560.) MCL 125.540 describes the process by which enforcement agencies must provide notice

---

[9] Plaintiff's response brief argues that Defendant Minch's scope of employment "did not involve 1) deliberately lying about the condition of buildings to have them placed on the demolition list . . . 2) ma[king false] representations at a public forum; and 3) fail[ing] to provide notice of a dangerous building as required by [statute]." (ECF No. 29-3, PageID.880.) However, the first two allegations do not appear in Plaintiff's complaint but are instead inferences that its response pulls from non-party affidavits buried in the attachments to the complaint. (*See* ECF No. 23-1.) Additionally, even taking as true the response's allegation that Defendant Minch deliberately lied about the condition of Plaintiff's buildings, the root of Plaintiff's civil conspiracy claim as stated in the complaint relates to a denial of due process during permitting and demolishment decisions. That the process and outcome were adverse to Plaintiff does not render them outside the scope of Defendants' employment.

to building owners after finding a structure to be a "dangerous building." MCL 125.541 describes the "dangerous building" hearing procedure, as well as the post-hearing remedy and appellate process. Plaintiff argues that Defendants violated these statutes by failing to provide notice of the December 2018 demolition hearings and by ignoring Plaintiff's requests for information about appeal. (*See* ECF No. 20, PageID.555.)

These two statutes are part of a larger body of Michigan law setting forth municipal procedures for demolishing "dangerous buildings." *See* MCL 125.538, *et seq*. However, these statutes do not contain explicit causes of action, and Plaintiff does not argue in its complaint or response that the Court should infer an implied cause of action. Instead, Plaintiff's response reiterates that Defendants did in fact violate these two statutes and argues that "[i]t is the violation of these housing statutes that sets the basis for any due process claim." (ECF No. 29-3, PageID.883.)

Plaintiff is correct that Defendants' alleged violation of these statutes supports its due process claim. However, violation of these statutes does not provide an independent cause of action. And to the extent that Plaintiff's response requests that the Court find an implied cause of action in these statutes, the Court declines to do so. Other courts

18

in this circuit have similarly declined to find implied causes of action in Michigan law when other causes of action were readily available to the plaintiffs, as with Plaintiff's due process claims in this case. *See, e.g.*, *Davis v. Lamp*, No. 15-cv-863, 2017 WL 8077495, at *8 (W.D. Mich. Dec. 22, 2017) ("Michigan[] courts have generally declined requests to imply a cause of action for damages for violations of Michigan's constitution. For example, in *Jones v. Powell*, 612 N.W.2d 423, 425-27 (Mich. 2000) (*per curiam*), the Michigan Supreme Court refused to create a judicially inferred cause of action for damages against a municipality or against an individual government employee, because other remedies were available against such defendants.")

Accordingly, the Court dismisses this claim.

## C. Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIC, § 1. In Counts 1 and 2 of the complaint, Plaintiff claims that Defendant violated its constitutional right to both substantive and procedural due process. Plaintiff brings these claims pursuant to 42 U.S.C. § 1983, "under which an individual may bring a

19

private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Guertin v. State of Michigan*, 912 F.3d 907, 915 (6th Cir. 2019) (internal quotations omitted). In addition to arguing that Plaintiff has failed to state a viable constitutional claim, Defendant Minch also raises the defense of qualified immunity.

For the reasons below, the Court finds that Plaintiff has not established a viable substantive or procedural due process claim, and that there is accordingly no Fourteenth Amendment Violation that would warrant qualified immunity analysis. The Court dismisses this count.

### 1. Qualified Immunity

Defendant Minch raises the defense of qualified immunity to bar Plaintiff's federal claims. (ECF No. 24, PageID.735.) Qualified immunity "shields public officials from undue interference with their duties and from potentially disabling threats of liability." *Guertin*, 912 F.3d at 916. When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to it. *Id.* at 917. To do this, a plaintiff must show both that 1) the official violated

20

a statutory or constitutional right; and 2) that the right was clearly established at the time of the challenged conduct." *Id.*

For the following reasons, the Court finds that Defendants did not violate Plaintiff's Fourteenth Amendment constitutional rights. The qualified immunity inquiry therefore ends here.

### 2. Substantive Due Process

Plaintiff argues that Defendants violated its substantive due process rights by "improperly [] determining the Plaintiffs' properties were candidates for demolition, when Defendants have approved various work and cited compliance and where the structures of all properties are in reasonable repair and do not rise to any level of a dangerous building requiring condemnation and demolition." (ECF No. 20, PageID.559.)

To successfully claim a violation of substantive due process, a plaintiff must establish the existence of a constitutionally protected property or liberty interest, and then demonstrate that the plaintiff has been deprived of the interest. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992); *see also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012). Alternatively, a plaintiff may articulate a substantive due process claim by arguing that

government conduct was so arbitrary or egregious that it "shocked the conscience." *Davet v. City of Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006).

In this case, Plaintiff has not properly plead either theory. Plaintiff does not explain why any conduct in this case is so arbitrary or egregious that it "shock[s] the conscience"; nor has Plaintiff clearly articulated a deprivation of a particular liberty or property interest. Instead, Plaintiff's description of the alleged substantive due process violation is based entirely in procedural due process: Plaintiff describes the deprivation as Defendants having "determin[ed] th[at] Plaintiff's properties were candidates for demolition, when [Plaintiff complied with all permitting requirements]."[10] (*See* ECF No. 20, PageID.559.) Indeed, Plaintiff's

---

[10] For the foregoing reasons, the Court believes it would strain Plaintiff's complaint to construe it as asserting a substantive due process *property* claim, rather than a duplicative procedural due process claim. However, Plaintiff has not plead a proper claim even if the Court were to construe the complaint as asserting a substantive due process property deprivation through the impending demolition notice and loss of the building permit. In order "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). "A party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Id*. While property owners may have a property interest in "the existing zoning classification for their property" and in "a discretionary benefit, such as a re-zoning ordinance, after it is conferred," they lack a property interest in benefits that are conferred at the complete discretion of the municipality. *Id*. Thus,

response ignores its substantive due process argument and summarizes its Fourteenth Amendment violation in the following way: "Plaintiff was never provided an opportunity for a hearing to determine whether the building w[as] dangerous[,] depriving them of procedural due process afforded under the Fourteenth Amendment." (ECF No. 29-3, PageID.891.)

Defendant's substantive due process claim is therefore duplicative of its procedural due process claim and is appropriately dismissed. *See Kiser v. Kamder*, 831 F.3d 784, 791 (6th Cir. 2016) ("The Supreme Court has repeatedly held that where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide."); *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("A cause

---

to state a proper substantive due process property claim for the continued permit for the buildings and in challenging the demolishment orders, Plaintiff would need to demonstrate that Defendant City of Inkster "lacked discretion to deny [its] use of the [building] if it complied with certain minimum, mandatory requirements." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 856 (6th Cir. 2012). Plaintiff has not made this showing, and any constitutional property claim would accordingly fail.

of action cannot be based in substantive due process where a more specific constitutional provision is available.").

Accordingly, the Court dismisses this claim.

### 3. Procedural Due Process

Plaintiff charges Defendants with "attempting to demolish Plaintiff's property without notice and a hearing[, as well as by attempting to] demolish the property when it was not in a condemnable condition, and in fact has been determined structurally sound by an engineering expert." (ECF No. 20, PageID.560.)

"Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Hill v. City of Jackson, Michigan*, 751 Fed. Appx. 772, 776 (6th Cir. 2018) (quoting *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)). Specifically, in order to establish a procedural due process claim, a plaintiff must establish three elements: 1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; 2) that they were deprived of this protected interest within the meaning of the Due Process Clause; and 3) that the state did not afford them adequate procedural rights prior

to depriving them of the protected interest. *Med Corp, Inc.*, 296 F.3d at 409.

Additionally, in procedural due process cases challenging established state procedures, plaintiffs must "plead and prove that there is no adequate state-law remedy for [a] deprivation before bringing a § 1983 claim for damages based on a procedural due process violation." *Hill*, 751 Fed. Appx. at 776 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981) (overturned on unrelated grounds)). In this case, Plaintiff argues that Defendant refused to provide it with "information [] as to the administrative process to effectuate due process." (ECF No. 20, PageID.555.) However, it is incumbent upon Plaintiff to research its own potential remedies provided in state law and explain to the Court why those remedies are unavailable. Plaintiff has not made such a showing in this case.

To the contrary, "though the burden rest[s] with [Plaintiff] to plead and prove the absence of state-law remedies, there is reason to believe that such a remedy would be available here." *Hill*, 751 Fed. Appx. at 778. Even accepting as true Plaintiff's allegation that Defendants failed to provide advance notice of the December 2018 demolition hearing,

25

Plaintiff had at least one remedy available through the very same dangerous building statue that it accuses Defendants of violating: it could still await "a final decision or order of the legislative body or board of appeals," and then appeal that final decision "to the circuit court by filing a petition for an order of superintending control within 20 days from the date of the decision." MCL 125.542. In one of the final communications on this record between Defendant Minch and Plaintiff's agent Mr. Chambers, Defendant Minch advised that "[t]here ha[d] been no final approvals on any of the properties" and that Plaintiff would be welcome to send a representative to an upcoming February 20 meeting of the City Board (though Defendant Minch also advised that no appeal would be heard at that particular time). (ECF No. 22-3, PageID.677.) Accordingly, at the time of filing this case, Plaintiff still had an available statutory remedy with the Michigan circuit court: awaiting a final municipal decision and then directly appealing it pursuant to the dangerous building codes. Coupled with the fact that the City put Plaintiff on notice in early 2018 that its properties had been designated "dangerous buildings," and with the fact that Plaintiff's buildings had not been demolished at the time of its filing of the lawsuit or Defendant's motion

to dismiss, the Court readily concludes that Plaintiff has not met its burden in demonstrating that it has no other remedies at state law.

Accordingly, the Court dismisses Plaintiff's procedural due process claim. *Hill*, 751 Fed. Appx. at 778.

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants motion to dismiss the complaint and DISMISSES this case.

IT IS SO ORDERED.

Dated: November 30, 2020               s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2020.


                                       s/William Barkholz
                                       WILLIAM BARKHOLZ
                                       Case Manager